UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HILLMAN POWER COMPANY, LLC,

          Plaintiff,          Case No. 1:19-cv-11009

v.          Honorable Thomas L. Ludington
          United States District Judge

ON-SITE EQUIPMENT MAINTENANCE,
INC.,

          Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION *IN LIMINE*
AND PLAINTIFF'S MOTION TO QUASH**

Plaintiff has filed a motion *in limine* the day before trial, as well as a motion to quash two subpoenas that Defendant served three days before trial. Both motions will be granted in part.

**I.**

This case arises from Defendant's effort to repair Plaintiff's steam-stop valve. Plaintiff Hillman Power Company is an electric powerplant located in Hillman, Michigan. Defendant On-Site Equipment Maintenance is a New Jersey company that repairs industrial equipment.

Plaintiff filed a five-count complaint, alleging breach of contract (Count I); negligence (Count II); unjust enrichment (Count III); fraudulent misrepresentation (Count IV); and negligent misrepresentation (Count V). ECF No. 1 at PageID.2. After removing the case here, Defendant filed a crossclaim for breach of contract, alleging Plaintiff failed to pay the balance owed. *Id.*; ECF No. 12-2 at PageID.87–90; *see also Hillman Power Co. v. On-Site Equip. Maint., LLC*, No. 19-11009, 2019 WL 13099838, at *1 (E.D. Mich. Oct. 16, 2019) (granting Defendant's motion to file a counterclaim).

In December 2020, Plaintiff sought summary judgment on Counts I, III and V. ECF No. 55 at PageID.1117. In turn, Defendant, filed a cross-motion for summary judgment on its breach claim. *Id.* at PageID.1122. Defendant's motion was granted, dismissing Counts II, III, IV and V—leaving only Count I (breach). *Id.* at PageID.1132.

The parties' crossclaims for breach of contract remained because there were genuine issues of material fact regarding whether the steam valve was inoperable and who breached the contract first. *Id.* at PageID.1122–23. The case proceeded for approximately 21 months, but both parties claimed that they were insolvent. *See* ECF No. 73 at PageID.1248–49.

Plaintiff then contended that Defendant's "insolvency was due to its owners' systematic and coordinated siphoning of funds from its business bank accounts for their own personal use." *Id.* at PageID.1249. According to Plaintiff, Defendant's owners spent "all $336,490 within 25 days" on, among other things, "personal credit card payments," "trips to several high-end fashion stores," "high-end restaurants and steakhouses," "other high-end retailers," and "a pornographic 'cam girl.'" *Id.* at PageID.1250. So Plaintiff filed a motion for leave to amend its complaint to pursue Defendant's principals, which was denied because piercing the corporate veil is not a cause of action under the laws of Michigan or New Jersey; "it is postjudgment remedy," *Hillman Power Co. v. On-Site Equip. Maint.*, No. 1:19-CV-11009, 2022 WL 4553066 (E.D. Mich. Sept. 29, 2022).

Trial begins in hours. Yet Plaintiff filed an 869-days-late motion to exclude (1) evidence that Plaintiff closed its powerplant in May 2022 as irrelevant and unfairly prejudicial; (2) evidence of contracts between Plaintiff and Consumers Energy as irrelevant; and (3) evidence that Plaintiff is "owned" by "New Yorkers" as unfairly prejudicial, confusing, and time consuming. ECF Nos. 96; 98; *see also* ECF No. 38 (ending the motion *in limine* deadline on December 15, 2020). And it filed a motion to quash two subpoenas that Defendant served on May 1, 2023. ECF No. 97.

## II.

A "motion in limine" is any motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). In essence, they are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).

Given that motions *in limine* often rely on a limited factual record, they should be granted only if "[the] evidence [in question] is clearly inadmissible on all potential grounds.' " *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015) (quoting *Ind. Ins. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "In cases where that high standard is not met, 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.' " *Id.* (same).

The threshold issue of admissibility is relevance. "[E]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

Although relevant evidence is presumptively admissible, FED. R. EVID. 402, "a trial court may exclude relevant evidence if its probative value is substantially outweighed by the risk of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needless presenting cumulative evidence," FED. R. EVID. 403. "Much of the Federal Rules of Evidence is devoted to protecting parties from the introduction of unfairly prejudicial evidence." Jesse Schupack, Note, *The Liar's Mark: Character and Forfeiture in Federal Rule of Evidence 609(a)(2)*, 119 MICH. L. REV. 1031, 1035 (2021). "But evidence is not excluded as unfairly prejudicial merely because it is damaging to the party against whom it is

offered." *Fischer v. United States*, 608 F. Supp. 3d 533, 538 (E.D. Mich. 2022). Rather, unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

## A.

The first issue is whether the May 2022 closure of Plaintiff's powerplant bears relevance to the crossclaims for breaches of the contract. Plaintiff argues the closure "is irrelevant to the question of whether On-Site breached the contract by failing to repair the steam valve on time," as it transpired "years after the breach of contract at issue." ECF No. 96 at PageID.1678. Not so.

But the closure seems relevant to the breach. If the closure of the powerplant can be causally traced to Defendant's alleged breach—for example, through evidence that the tardy delivery or inoperability of the steam valve led to the plant's shutdown—then the closure could indeed shed light on the issue of Defendant's liability. That is, if Plaintiff's powerplant closed, then it is more likely that Defendant breached the contract by providing Plaintiff with an inoperable steam valve. Likewise, Defendant could invoke the temporal proximity of the shutdown and alleged breach in its defense. Conversely, if unrelated factors like natural disasters or regulatory problems brought about the closure, then it would lack relevance to liability.

Turning to the issue of damages, the closure of Plaintiff's powerplant—presumably its primary revenue source—could be pertinent to the quantum of damages that Defendant could recover. True, with respect to a federal cause of action, Plaintiff's inability to pay damages "would be irrelevant and should be excluded." *See, e.g.*, *Sullivan v. Detroit Police Dep't*, No. 2:08-CV-12731, 2009 WL 1689643, at *3 (E.D. Mich. June 17, 2009). But substantive Michigan law, which controls in this diversity case, provides that "[c]ontract damages are intended to give the party the benefit of the party's bargain by awarding [it] a sum of money that will, *to the extent possible*, put

it in as good as a position as it would have been in had the contract been fully performed." Mich. M. Civ. JI 142.31 (emphasis added). In this way, should Defendant prevail on its counterclaim, the closure might lead the jury to conclude that it would be less or not possible to compensate Defendant and to adjust its damages determination accordingly. Notably, however, Plaintiff has made no effort to explain its theory of damages one way or another. Even so, a limiting instruction to the jury that it may not consider the closure of Plaintiff's powerplant for any purpose other than those mentioned here would clear up any confusion. *See* FED. R. EVID. 105.

But Plaintiff's conclusory statements do not demonstrate any actual prejudice—much less that it would substantially outweigh the probative value explained above. Plaintiff asserts it "would lead to collateral inquiries and disputes, distracting the jury from the central issues of the case and consuming valuable trial time," and that "such evidence would wrongly suggest to the jury that the reasons for the power plant closure are somehow relevant." ECF No. 96 at PageID.1679. What collateral inquiries and disputes? Plaintiff does not say. Because Plaintiff "do[es] not address the potential of unfair prejudice," it cannot outweigh the evidence's probative value at this time. *Clark v. Cnty. of Saginaw*, No. 1:19-CV-10106, 2022 WL 3701162, at *11 (E.D. Mich. Aug. 26, 2022).

For these reasons, the closure of Plaintiff's powerplant is conditionally relevant, and Plaintiff's motion *in limine* to exclude evidence of it will be denied without prejudice.

**B.**

The second issue is whether the contracts between Plaintiff and Consumers Energy are relevant. Plaintiff's whole argument here is that "any contracts between Hillman and Consumers Energy have no bearing on the parties' obligations and performances under the contract at issue in this case." ECF No. 96 at PageID.1678.

But Plaintiff has not submitted any such contracts, so their relevance cannot be evaluated. As with the powerplant closure, the relevance of the contracts will depend on their causal relationship to the alleged breaches. If Plaintiff entered into contracts with Consumers Energy to make up its losses for having to close its powerplant due to Defendant providing an inoperable steam valve after the agreed-upon time for delivery, for example, then it would be more likely that Defendant breached the contract. Similarly, depending on the dates of the contracts, they might demonstrate that Plaintiff attempted to mitigate the damages stemming from Defendant's breach. And Plaintiff "do[es] not address the potential of unfair prejudice," so it cannot outweigh the evidence's probative value at this time. *Clark*, 2022 WL 3701162, at *11. In this way, the contracts between Plaintiff and Consumers Energy are relevant and would cause little if any prejudice.

For these reasons, the contracts between Plaintiff and Consumers Energy are conditionally relevant. Consequently, Plaintiff's motion *in limine* to exclude evidence of them will be denied without prejudice.

## C.

The third issue is whether allowing the jury to hear that Plaintiff is "owned" by "New Yorkers" would be unfairly prejudicial, confusing, or time consuming. To render such evidence inadmissible, Plaintiff contends "the only purpose of On-Site's proposed evidence and references to Hillman as 'New Yorkers' is to inflame the jury's emotions and create a bias against Hillman, suggesting that it is an out-of-state company that put local residents out of work." ECF No. 96 at PageID.1679.

Neither Plaintiff's state of incorporation, nor its principal place of business, nor the residence of its owners or employees is relevant to whether it breached the contract. *See* FED. R. EVID. 401. If anything, such an argument would rely solely on geographical stereotypes tailored

solely to invoke the emotions of the jury. John F. Dovidio & Samuel L. Gaertner, *Intergroup Bias*, in 2 HANDBOOK OF SOCIAL PSYCHOLOGY 1084, 1085 (Susan T. Fiske et al. eds., 5th ed. 2010) ("[W]hen stereotypes are activated, individual group members are judged in terms of group-based expectations or standards."); *see United States v. Al-Maliki*, 787 F.3d 784, 795 (6th Cir. 2015) (acknowledging that evidence of a defendant's geographical roots is inadmissible if the plaintiff "first *elicits* and then *relies* on stereotypes to prove the offense"); *cf. Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 367 (2008) (Kennedy, J., dissenting) ("[F]or the discrimination against out-of-state commerce still would be too plain and prejudicial to be sustained." (citing *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 369 (2007) (Alito, J., dissenting))). Although it would arguably be relevant background information if mentioned once, any additional reference to Plaintiff, its owners, or its employees as "New Yorkers" or any similar monikers would be completely devoid of probative value and "suggest decision on an improper basis." *See* FED. R. EVID. 403 advisory committee's note to proposed rules; *see also* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 23 (2022) (explaining that cumulative evidence should be excluded if one piece of admissible evidence resolves the issue).

For these reasons, Defendant may not make any references to Plaintiff, its owners, or its employees as "New Yorkers" or "people from New York" or "Knickerbockers" or any similar monikers. Consequently, Plaintiff's motion *in limine* to exclude such references will be granted.

### III.

Nearly three years after the discovery deadline, Defendant served two subpoenas on Plaintiff for documents related to (1) any contracts or agreements between Hillman and Consumers Energy, and (2) a timeline that Chase Shepherd created at counsel's direction in anticipation of

litigation. *Compare* ECF No. 97-1 at PageID.1702–07, *with* ECF No. 29 at PageID.253 (setting discovery deadline as May 18, 2020). In contest, Plaintiff seeks a protective order to prevent the disclosure of those documents[1] under Federal Rule of Civil Procedure 26(c) and to quash the subpoenas Federal Rule of Civil Procedure 45(d)(3) as untimely, irrelevant to the claims at issue, protected by attorney-client privilege and work-product doctrine, and causing unnecessary annoyance, embarrassment, and oppression. ECF No. 97.

Calling Defendant's years-late subpoenas untimely would be an understatement. "A subpoena that seeks documents under Federal Rule of Civil Procedure 45 is a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order." *Martin v. Oakland Cnty.*, No. 2:06-CV-12602, 2008 WL 4647863, at *1 (E.D. Mich. Oct. 21, 2008) (collecting 10 cases). "[A] subpoena cannot be issued once discovery has closed." *Id.* at *2. Here, Defendant served the subpoenas on May 1, 2023—a whopping 1,078 days after discovery closed and a mere 3 days before trial. *Compare* ECF No. 29 at PageID.253, *with* ECF No. 97-1 at PageID.1702–07. Therefore, they will be quashed. *Thomas v. City of Cleveland*, 57 F. App'x 652, 654 (6th Cir. 2003) (per curiam) (affirming quashing of subpoena "served after the twice-extended discovery deadline." (citing *Buhrmaster v. Overnite Transp.*, 61 F.3d 461, 464 (6th Cir. 1995)).

The subpoenas will also be quashed under Rule 45(d)(3). Trial courts *must* quash or modify a subpoena that (1) fails to allow a reasonable time to comply, (2) requires a person to comply beyond the geographical limits specified in Rule 45(c), (3) requires disclosure of privileged or

---

[1] Because the resolution of Plaintiff's Rule 45 arguments is dispositive, its Rule 26(c) argument will not be addressed. *Shupe v. Rocket Cos.*, No. 1:21-CV-11528, 2023 WL 2411002, at *12 n.12 (E.D. Mich. Mar. 8, 2023) (citing *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 549 n.11 (S.D. Ohio 2000)).

other protected information if no exception or waiver applies, or (4) subjects a person to undue burden. FED. R. CIV. P. 45.

Both subpoenas violate two of those criteria. Both discovery subpoenas were issued three days before trial, which is not a reasonable time to comply with them. *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552–53 (6th Cir. 2015) (affirming district court's quashing of discovery subpoenas issued one week before trial). For the same reason, both contracts subject Plaintiff to an undue burden—especially considering that Plaintiff's principal place of business has apparently been closed down and leveled for years.

And the subpoena seeking documents related to the timeline created by Chase Shepherd is protected work product. A document prepared "in anticipation of litigation" is protected work product if it was prepared "because of" a party's objectively reasonable subjective anticipation of litigation. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006); *accord In re Pros. Direct Ins.*, 578 F.3d 432, 439 (6th Cir. 2009) (explaining that "anticipated litigation" must be the "driving force behind the preparation of each requested document" (quoting *Roxworthy*, 457 F.3d at 595)). Similarly, unless waived, the attorney-client privilege permanently protects communications that clients make in confidence to professional legal advisers in their capacity as such relating to and for the purpose of seeking legal advice. *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir.) (quoting *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998), *cert. denied sub nom. Tempo v. United States*, 143 S. Ct. 169 (2022) (mem.). This Court need not opine on whether the attorney-client privilege is arguably waived based on the timeline being "in part outlin[ing] factual circumstances that are all available in documents produced by [Plaintiff] to [Defendant], including e-mails, purchase orders, and wire payments, along with documents previously in [Defendant's] possession." ECF No. 97 at PageID.1698. For the timeline was "created after the facts surrounding

[the] breach of the contract, at the direction of counsel, for the purpose of detailing the events that occurred in anticipation of [Plaintiff] advancing a lawsuit against [Defendant]." *Id.*

For these reasons, both subpoenas will be quashed. Consequently, Plaintiff's motion for protective order, to quash subpoenas, or both will be granted in part.

IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion *in limine*, ECF No. 96, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent that it seeks to exclude any references to Plaintiff, its owners, or its employees as "New Yorkers" or "people from New York" or "Knickerbockers" or any similar monikers; it is **DENIED** in all other regards.

Further, it is **ORDERED** that Plaintiff's Motion for Protective Order, to Quash Subpoenas, or Both, ECF No. 97, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent that it seeks to quash both subpoenas; it is **DENIED** in all other regards.

**This is not a final order and does not close the above-captioned case**.

Dated: May 4, 2023                                     s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge