UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HILLMAN POWER COMPANY, LLC,

Plaintiff,                                    Case No. 1:19-cv-11009

v.                                            Honorable Thomas L. Ludington
                                              United States District Judge
ON-SITE EQUIPMENT MAINTENANCE, INC.,

Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR JUDGMENT AS
MATTER OF LAW AND NEW TRIAL, GRANTING PLAINTIFF'S MOTION TO
AMEND JUDGMENT, AND AMENDING JUDGMENT**

In January 2019, Hillman Power Company sued On-Site Equipment Maintenance for breach of contract, negligence, unjust enrichment, and the two-fold charge of misrepresentation—fraudulent and negligent. On-Site, undeterred, filed a counterclaim, alleging breach of contract for Hillman's unpaid balance. After years of litigation, the jury returned a verdict in favor of Hillman, awarding $312,647.

On-Site is now contesting the jury's verdict, claiming it is flawed as a matter of law. Hillman, on the other hand, is seeking to add prejudgment and postjudgment interest to its award.

**I.**

This is a case about a dispute regarding a contract in which Plaintiff Hillman Power Company hired Defendant On-Site Equipment Maintenance to repair a large, industrial steam-stop valve. Plaintiff is an electric powerplant located in Hillman, Michigan. Defendant is a New Jersey company that repairs industrial equipment.

**A.**

On August 31, 2018, Defendant sent Plaintiff a price quote to repair the valve for $17,200. ECF No. 39-13 at PageID.536. Then they entered into a contract for repair, which at least included six Purchase Orders drafted and issued by Plaintiff: (1) PO1 for $25,200–$30,000 on September 14, 2018; (2) PO2 for $66,700 on October 2, 2018, at 11:00 AM; (3) PO3 for $225,100 on October 2, 2018, at 2:33 PM; (4) PO4 for $271,100 on October 3, 2018; (5) PO5 for $345,100 on October 9, 2018; and (6) PO6 for $363,600 on October 10, 2018. *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2020 WL 7645598, at *2–4 (E.D. Mich. Dec. 23, 2020).

On October 5, 2018, Plaintiff deposited $243,990 into Defendant's Bank of America account, as well as $74,000 on October 11, 2018. *Id.* at *3. On October 16, 2018, Plaintiff purchased a second valve for $135,500 from a company in California. ECF No. 40-44. On October 18, 2018, Defendant delivered the first valve to Plaintiff and installed it the next day. ECF No. 39-7 at PageID.516. Then in November 2018, Plaintiff paid Defendant another $18,500, for a total of $336,490. ECF Nos. 39-6 at PageID.498; 39-36 at PageID.598.

**B.**

In January 2019, Plaintiff filed a five-count complaint, alleging breach of contract for untimely delivery of an inoperable valve (Count I); negligence (Count II); unjust enrichment (Count III); fraudulent misrepresentation (Count IV); and negligent misrepresentation (Count V). ECF No. 1 at PageID.2. After removing the case here from the Twenty Sixth Circuit Court of Montmorency County, Defendant filed a crossclaim for breach of contract, alleging Plaintiff failed to pay the full bill. *Id.*; ECF No. 12-2 at PageID.87–90; *see also Hillman Power Co. v. On-Site Equip. Maint., LLC*, No. 19-11009, 2019 WL 13099838, at *1 (E.D. Mich. Oct. 16, 2019) (granting Defendant's motion to file a counterclaim).

- 2 -

In December 2020, Plaintiff sought summary judgment on Counts I, III and V. ECF No. 55 at PageID.1117. In turn, Defendant, filed a cross-motion for summary judgment on its breach claim. *Id.* at PageID.1122. Defendant's motion was granted, dismissing Counts II, III, IV and V—leaving only Count I (breach). *Id.* at PageID.1132.

The parties' crossclaims for breach of contract remained because there were genuine issues of material fact regarding whether the steam valve was inoperable and who breached the contract first. *Id.* at PageID.1122–23. The case proceeded for approximately 21 months, when Defendant claimed that it was insolvent, and Plaintiff explained that it was shutting down its powerplant. *See* ECF No. 73 at PageID.1248–49.

Plaintiff then contended that Defendant's "insolvency was due to its owners' systematic and coordinated siphoning of funds from its business bank accounts for their own personal use." *Id.* at PageID.1249. According to Plaintiff, Defendant's owners spent "all $336,490 within 25 days" on, among other things, "personal credit card payments," "trips to several high-end fashion stores," "high-end restaurants and steakhouses," "other high-end retailers," and "a pornographic 'cam girl.'" *Id.* at PageID.1250. So Plaintiff filed a motion for leave to amend its complaint to pursue Defendant's principals, which was denied because piercing the corporate veil is not a cause of action under the laws of Michigan or New Jersey; "it is a postjudgment remedy," *Hillman Power Co. v. On-Site Equip. Maint.*, No. 1:19-CV-11009, 2022 WL 4553066 (E.D. Mich. Sept. 29, 2022).

A trial was held from May 4–9, 2023. The jury returned a verdict for Plaintiff on its breach-of-contract claim, awarding damages in the amount of $312,647. ECF No. 105. Judgment was entered for the same. ECF No. 106.

Now Defendant seeks to undo the jury's verdict as a matter of law, ECF No. 107, while Plaintiff seeks to add prejudgment and postjudgment interest. ECF Nos. 108; 112. Plaintiff contests

Defendant's request, ECF No. 113, but Defendant does not contest Plaintiff's calculations, ECF Nos. 114; 115.

## II.

When sitting in diversity, federal courts "use the standards for a judgment as a matter of law applicable under the law of the forum state." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 319 (6th Cir. 2011) (quotation omitted). Here, Michigan law governs, so the evidence must be construed "in the light most favorable to the nonmoving party." *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 857 (Mich. 2005). And a directed verdict may be granted only if, after viewing all the evidence in the light most favorable to the party opposing the directed verdict, reasonable minds could not differ on any question of material fact. *Caldwell v. Fox*, 231 N.W.2d 46, 49 (Mich. 1975). Applying this standard, Defendant's motion fails.

## A.

Defendants first argue that no reasonable juror could conclude that time was of the essence in its contract with Plaintiff. ECF No. 107 at PageID.1767–70. The law of Michigan is admirably straightforward, setting forth the standard in plain English: time is not of the essence unless it is expressly made so in the contract, or it is clear from the circumstances or nature of the contract that the parties so intended. *J. S. Evangelista Dev., LLC v. APCO, Inc.*, No. 357789, 2023 WL 2051174, at *4 (Mich. Ct. App. Feb. 16, 2023) (quoting *MacRitchie v. Plumb*, 245 N.W.2d 582, 585 (Mich. Ct. App. 1976)).

The evidentiary record here, construed in Plaintiff's favor as required, does not lead to the unequivocal conclusion that time was not of the essence. Defendant leans heavily on the notion that the mere stipulation of a performance date does not independently establish the primacy of time in a contract. *See* ECF No. 107 at PageID.1768. But to stop the analysis there is to disregard

important facts. As Defendant notes, the Purchase Orders contain a persistent reference to "NET 30" payment terms. *Id.* at PageID.1763–64. This phrase, mundane as it might seem, takes on significance in the context of the entire contract. A party who extends NET 30 terms is saying: "I expect to have done my part within 30 days, and I expect payment within that time." This expectation inherently relates to the timeliness of performance, not merely the consideration to be received in return.

Moreover, Defendant underestimates the importance of the note in the third modification, "Expected final price + shipment to plant on October 6." *Id.* at PageID.1764. True, it does not enumerate specific consequences for failure to meet the deadline. Yet given the commercial context of this agreement—a powerplant shutdown while waiting on a crucial repair to restart operations—it strains credulity to argue that delay would not bear serious repercussions. And that notion was supported by ample testimony at trial—Plaintiff's employees and advisors explained the importance of getting the plant operational again, and Plaintiff's parent company described numerous conversations with Defendant regarding the importance of timing and assurances of prompt delivery—which Defendants did not contest. Hence, notwithstanding the lack of an explicit "time is of the essence" clause, the overall context and substance of the agreement suggest an emphasis on timely performance.

The record therefore supports the reasonable inference that, for the parties to this particular contract, time indeed mattered significantly.

**B.**

The second issue is Defendant's attempt to paint the Purchase Orders as isolated and standalone contracts, each superseding the last. ECF No. 107 at PageID.1770–72.

Reviewing the record in the light most favorable to Plaintiff does not identify sufficient evidence to merit judgment as a matter of law for Defendant. Viewing the Purchase Orders and other evidence in the totality, reasonable minds could indeed differ on the contractual obligations. The jury was therefore in the proper position to make that determination. It is indeed difficult to dispute the jury's conclusion that the original time stipulation in the purchase order constituted an essential term of the agreement and that the later modifications did not wipe this term clean, particularly considering the continuous nature of the transaction and the corresponding losses incurred by Plaintiff due to the delay.

A major contention by Defendant is that the various modifications of the purchase order rescinded the original time commitment. ECF No. 107 at PageID.1770. But that argument seems to conflate change with obliteration. While it is true that modifications may alter the terms of an agreement, *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 238 (Mich. 1996), it does not follow that any modification—regardless of its content—voids all prior provisions. Moreover, no evidence reflects an intent to nullify the original time obligation. *Archambo v. Laws. Title Ins.*, 646 N.W.2d 170, 177 n.16 (Mich. 2002) (explaining that inconsistent terms may demonstrate a superseded contract "unless it appears that this is not what the parties intended"). The changing scope of work and associated costs do not inherently conflict with a punctual delivery. Defendant's position teeters on the precarious notion that any alteration to a contract allows for a *carte blanche* dismissal of previously agreed terms. Michigan law simply does not permit such an inference—an unreasonable conclusion on the facts of this case.

Yet the jury's decision did not hinge solely on the delayed delivery. As Plaintiff correctly notes, the jury also heard evidence that Defendant substantially breached the contract by failing to

deliver the valve in a satisfactory state, *see* ECF No. 113 at PageID.1844, which seems to be missing from Defendant's brief, *see* ECF No. 107 at PageID.1770–72.

In sum, Defendant's second argument fails because the record demonstrates ample evidence from which a reasonable jury could determine that Defendant breached the contract, resulting in substantial damages to Plaintiff.

### C.

The third issue is Defendant's contention that Plaintiff waived any requirement for the valve to be shipped by a particular date. ECF No. 107 at PageID.1772. However, this argument lacks merit given the facts of this case. The Parties' interactions after the agreed-upon delivery date suggest a more nuanced situation than a simple waiver of the timing requirement.

Under Michigan law, "a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) (citation omitted). Here, the jury was presented with a narrative not of two parties mutually deciding to disregard a contractual provision, but rather one party—Plaintiff—forced into making the best of a bad situation. When Defendant failed to deliver an operable valve by October 6, 2018, Plaintiff had to keep its operation running, and could hardly sit idly while waiting for Defendant, once again, to fulfill its obligations.

A blanket determination of waiver based on these circumstances would open the door for opportunistic breaches, secured in the knowledge that any attempts by the aggrieved party to mitigate the damage would be construed as a waiver of contractual requirements. Michigan law does not endorse such an unsettling prospect.

The Purchase Orders made after the initial delivery deadline can be seen differently when viewed in the light most favorable to Plaintiff. The changes could be interpreted as an attempt to

manage an ongoing and evolving situation, where the Parties grappled with the practicalities of an imperfect world—as opposed to a clear waiver of the original delivery date. Or that Plaintiff was subject to a classic bait-and-switch tactic based on Defendant's numerous representations of its ability to perform the work faster than it did.

Defendant's assertion that the removal of any language related to an expected shipment date from later revisions of the contract amounts to a waiver is not well founded. As far as Plaintiff is concerned, this could simply reflect a pragmatic response to the reality of Defendant's breach, rather than a knowing and voluntary surrender of its rights. At trial, Plaintiff's narrative was persuasive enough for the jury to find that Defendant substantially breached the contract first. To discount this finding, as Defendant does, is to effectively override the function of the jury as the factfinder—an approach that contradicts the governing law.

In conclusion, viewing the evidence in the light most favorable to Plaintiff, reasonable minds could differ as to whether Plaintiff waived the timing requirement in the contract. Consequently, Defendant's third argument also lacks merit.

**D.**

Fourth, Defendant claims that equitable estoppel bars Plaintiff's enforcement of the delivery date. ECF No. 107 at PageID.1776–77.

Michigan law defines equitable estoppel as a doctrine "that prevents one party to a contract from enforcing a specific provision contained in the contract." *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 116 (Mich. 2005) (citation omitted). Equitable estoppel arises where a party, by representations or silence, intentionally or negligently induces another party to believe certain facts, upon which the latter justifiably relies and acts, such that they will be prejudiced if the former party is allowed to deny the existence of those facts. *Id.*

Defendant argues Plaintiff induced it to believe their contractual relationship continued by allowing it to perform work and by negotiating further performance. ECF No. 107 at PageID.1777.

But that argument misapprehends the nature of the doctrine. Equitable estoppel operates as a shield used to prevent injustice and unfairness, not as a sword used to procure a favorable outcome.

Even if Defendant's argument convinces this Court to stretch equitable estoppel beyond its bounds, it would not absolve Defendant from its fundamental contractual obligation: to repair the valve. The evidence demonstrated, and the jury agreed, that Defendant failed to return the valve in good working order, despite the agreed-upon delivery date. The jury awarded damages based on lost revenue and consequential damages—consequences directly traceable to the nonoperational valve. Defendant's equitable estoppel argument, even if valid, cannot alter the jury's factual finding: the valve was not repaired.

Even so, Defendant's argument does not satisfy the requirements for equitable estoppel. Defendant's continued performance does not necessarily mean that Plaintiff represented that there was no breach of contract. As explained above, Plaintiff might have merely been making the best of a bad situation. Further, Defendant has not presented any evidence that it was unaware of the importance of the timing provision or that it relied, to its detriment, on any representation by Plaintiff. The record reveals that Defendant was fully aware of the significant losses that Plaintiff would suffer if the valve was not delivered within the scheduled maintenance window. Indeed, the jury heard evidence that Defendant knew of the planned shutdown, knew that a late return would result in losses, and indeed delivered a faulty valve nearly three weeks after the agreed-upon delivery date. It is hard to see how any of this equates to Defendant being unaware of the true facts, fraudulently misled, or "induced," as it alleges. ECF No. 107 at PageID.1777. The jury reached a

reasonable conclusion supported by law, that Defendant breached the contract by not delivering a repaired valve on time. This does not amount to estoppel—equitable or otherwise.

Moreover, it is pertinent to note that the doctrine of equitable estoppel was not presented at trial, depriving Plaintiff of an opportunity to present counterevidence. Invoking it at this stage amounts to a tactical sidestep, a maneuver inconsistent with the principles of fairness embodied within the doctrine itself. *Lothian v. City of Detroit*, 324 N.W.2d 9, 17-18 (Mich. 1982) (explaining that the purpose of equitable estoppel is "to accomplish the prevention of results contrary to good conscience and fair dealing" (quoting *McLearn v. Hill*, 177 N.E. 617, 619 (Mass. 1931))).

Thus, reasonable minds could differ—and indeed did differ—on the facts of this case. Defendant's fourth argument, therefore, lacks merit.

### E.

Fifth, Defendant argues that it neither breached any time requirement nor caused damages. ECF No. 107 at PageID.1777–80. Defendant adds that its late delivery of the valve did not damage Plaintiff, because Plaintiff could not have made the valve work properly at the time. *Id.* All these arguments lack merit based on the record.

First, the time requirement was a material term of the contract. *See* discussion *supra* Section II.A. The phrase "Expected final price + shipment to plant on October 6" in the third modification is not some offhand comment; rather it forms part of the contract and was understood by both parties as such. ECF No. 107 at PageID.1764. Defendant's breach of this term is therefore a substantial breach, even more so given the testimony from Defendant's own witness who acknowledged that any delay could cause Plaintiff to suffer losses.

Second, Defendant's argument that Plaintiff would not have been able to make the valve work is speculative. There is no guarantee that the valve would not have worked if it had been

delivered on time. Perhaps more importantly, the jury specifically found that the valve was not in good working order when it was delivered, which constitutes a separate, substantial breach. The law for such a circumstance is clear in Michigan: "[T]he breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible." *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (Mich. 1964). Even so, Plaintiff's burden was not to explain *why* the valve did not work, but rather to prove that the valve did not work due to Defendant's actions. And the jury drew that conclusion. Meanwhile, it was Defendant's responsibility to prove that Plaintiff breached the contract, a burden it failed to meet at trial.

Third, Plaintiff established causation between its damages and Defendant's breach. The jury awarded Plaintiff $312,647 in damages—an amount that, while not specifically itemized, closely aligns with Plaintiff's requested relief for lost revenue and consequential damages. *See* ECF No. 106 at PageID.1751 n.1. These damages are clearly the result of Defendant's failure to deliver a working valve on time.

Thus Defendant's attempt to establish judgment as a matter of law is, essentially, an effort to reargue the facts—a task reserved for the jury. The standard of review forbids the second-guessing of the jury's verdict. *Caldwell v. Fox*, 231 N.W.2d 46, 49 (Mich. 1975). Viewing the evidence in the light most favorable to Plaintiff reveals that reasonable minds could differ on the material facts at issue, and in fact did so.

For those reasons, Defendant's Motion for Judgment under Civil Rule 50 as a matter of law will be denied.

### III.

In the same document as motion for relief under Civil Rule 50, Defendant also seeks a new trial under Civil Rule 59. ECF No. 107 at PageID.1780–82.

As a threshold matter, combined motion will be denied for its failure to comply with the local rule for each motion to be filed separately. E.D. Mich. LR 7.1(d)(1)(A) ("Unless the court permits otherwise, each motion and response to a motion must be accompanied by a single brief."); E.D. Mich. Electronic Filing Policies and Procedures LR R5(f) ("Motions must not be combined with any other stand-alone document.").

Yet the request would fail on the merits too. A new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(2). The standard to meet this is high. *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005). A new trial is appropriate when the jury reaches a seriously erroneous result, as evidenced by (1) the verdict being against the clear weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, such as proceedings being influenced by prejudice or bias. *Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 737 (6th Cir. 2016) (cleaned up). None of these are present here.

Defendant's primary assertion is that the jury's verdict was erroneous because the contract between the Parties did not specify that time was of the essence and, therefore, its late delivery of the valve did not constitute a material breach of the contract. ECF No. 107 at PageID.1782. It also asserts that the Parties' modifications to the Purchase Orders removed any obligation for Defendant to deliver the valve by a specific date, and hence, the trial court erred in allowing the jury to consider the timeliness of the valve's delivery. *Id.*

But the jury was presented with evidence that Defendant promised to deliver the repaired valve by October 6, 2018—an obligation Defendant admits it did not meet. *See* ECF No. 107 at PageID.1764. The contractual language, as well as Mr. Noll's notation, "Expected final price + shipment to plant on October 6," provided the basis for the jury to find a commitment to a specific delivery date. *See* discussion *supra* Sections II.A; II.E. The later modifications to the Purchase Orders did not explicitly void this expectation, leaving room for the jury to reasonably conclude that Defendant had committed to—and then failed to meet—a delivery deadline. *See* discussion *supra* Section II.B.

And, as explained, the facts do not support Defendant's claim of waiver. Defendant asserts that Plaintiff's conduct after the missed delivery date, namely its continuance of the contractual arrangement, equates to a waiver of the delivery deadline. ECF No. 107 at PageID.1782. But waiver is not lightly inferred. A party's failure to insist upon strict performance does not necessarily constitute a waiver of subsequent breaches, particularly where, as here, Plaintiff's actions can be understood as necessary steps to mitigate its damages. *See* discussion *supra* Section II.B.

Finally, Defendant's contention that the alleged breach was not "substantial" and did not cause Plaintiff's damages, *see* ECF No. 107 at PageID.1782, is directly contradicted by the jury's award. The jury awarded damages aligning with Plaintiff's claimed lost revenue and consequential damages stemming from Defendant's late delivery, indicating that the jury found the breach not merely nominal but indeed significant and damaging. *See* discussion *supra* Section II.E.

Defendant's arguments for a new trial are, in essence, a request for this Court to reweigh the evidence and to supplant the jury's determination with its own. That is not this Court's role. The jury's verdict was not against the clear weight of the evidence, the damages were not

- 13 -

excessive, and the proceedings were not marked by prejudice or bias. The jury was presented with the evidence, given appropriate instructions, and made its decision. Therefore, this Court have no ground to second guess the jury's decision.

For those reasons, Defendant's request for a new trial will be denied. Consequently, Defendant's motion will be denied with prejudice.

## IV.

As a final matter, Plaintiff has filed a motion to amend the judgment to add prejudgment and postjudgment interest. ECF No. 108, which Defendant does not oppose in the event its motions for judgment and a new trial are denied, ECF No. 114; *see also* ECF Nos. 112; 115.

Plaintiff is correct that it is entitled to prejudgment interest in this diversity case under Michigan Compiled Laws § 600.6013, calculated from the time Plaintiff filed its Complaint to the time judgment was entered by this Court, which totals $36,774.05. On June 8, 2023, the Clerk taxed costs in this matter totaling $1,406.45, resulting in a new pre-judgment interest calculation totaling $36,939.48. ECF No. 112 at PageID.1828. Plaintiff is also correct that prejudgment interest includes taxed costs. *See* MICH. COMP. LAWS § 600.6013(8); *see also Ayar v. Foodland Distribs.*, 698 N.W.2d 875, 877 (Mich. 2005) (per curiam); *Grow v. W.A. Thomas Co.*, 601 N.W.2d 426, 438 (Mich. Ct. App. 1999). And Plaintiff is correct that it is entitled to postjudgment interest under 28 U.S.C. § 1961, computed daily and compounded annually at a rate of 4.72%. And Defendant agrees. ECF No. 114.

Therefore, Plaintiff's motion will be granted. Consequently, the Judgment will be amended to award Plaintiff $36,939.48.

**V.**

Accordingly, it is **ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law and a New Trial, ECF No. 107, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that Plaintiff's Motion to Amend Judgment, ECF No. 108, is **GRANTED**.

Further, it is **ORDERED** that the Judgment, ECF No. 106, is **AMENDED** to award Plaintiff a total of $36,939.48.

**This is a final order**.

Dated: August 3, 2023                                s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

- 15 -